IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: ) <br> ) <br> PARIS EDWARD THOMAS LOYLE, ) <br> AND KATHERINE CHRISTINE LOYLE, ) <br> ) <br> Debtors. ) <br> ) <br> _____ ) <br> ) <br> PARIS EDWARD THOMAS LOYLE, ) <br> AND KATHERINE CHRISTINE LOYLE, ) <br> ) <br> Plaintiffs, ) <br> vs. ) <br> ) <br> U.S. DEPARTMENT OF EDUCATION, ) <br> et al., ) <br> Defendants. ) <br> ) | Case No. 19-10065 <br> Chapter 7 <br><br><br><br><br><br><br><br><br><br> Adversary No. 20-5073 |

## **STIPULATION OF FACTS AS TO U.S. DEPARTMENT OF EDUCATION AND KATHERINE LOYLE**

COME NOW the Plaintiffs and the United States Department of Education through their respective counsel and submit the attached Declaration of Cristin Bulman Regarding Katherine Loyle as stipulated facts as to the DOE Student Loans for Katherine Loyle.

Respectfully submitted,

s/ Brian D. Sheern
BRIAN D. SHEERN
Assistant United States Attorney
301 N. Main, Suite 1200
Wichita, KS  67202
Tele:   316-269-6481
Fax:    316-269-6484
Brian.Sheern@usdoj.gov
Ks S.Ct.No. 21479
Attorney for DOE

In the United States Bankruptcy Court
In re: Paris and Katherine Loyle v. U.S. Department of Education, et al.
      Adversary No. 20-5073
Stipulation of Facts As To U.S. Department of Education
Page 2

Approved by:
PRELLE ERON & BAILEY, P.A.

s/ January Bailey
January M. Bailey, #23926
Eron Law, P.A.
301 N. Main, Suite 2000
Wichita, KS 67202
T: (316) 262-5500
F: (316)262-5559
january@eronlaw.net
Attorney for Plaintiff

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| PARIS EDWARD THOMAS LOYLE, | ) | Case No. 19-10065 |
| AND KATHERINE CHRISTINE LOYLE, | ) | Chapter 7 |
| | ) | |
| Debtors. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| PARIS EDWARD THOMAS LOYLE, | ) | |
| AND KATHERINE CHRISTINE LOYLE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| vs. | ) | Adversary No. 20-5073 |
| | ) | |
| U.S. DEPARTMENT OF EDUCATION, | ) | |
| et al., | ) | |
| Defendants. | ) | |
| | ) | |

DECLARATION OF CRISTIN BULMAN REGARDING KATHERINE LOYLE

I, Cristin Bulman, hereby declare as follows:

1. I am currently employed as a Loan Analyst, by the United States Department of Education [ED], Federal Student Aid, Student Experience and Aid Delivery Office, Delivery Systems and Extended Workforce Support, Borrower Processing Division, Discharge Branch, Litigation Support Team. I have been assigned the Katherine Christine Loyle Adversary case and reviewed that file in preparation of this Declaration. All amounts or events stated herein were derived from the records of the United States Department of Education.

2. As a Loan Analyst, my responsibilities are to assist United States Attorney Offices with both Federal District and Bankruptcy Court litigation involving student loans. The litigation support provided includes, but is not limited to, the following: (1) providing background information on the individual's loan history (including repayment history

and forbearance/deferment history) and loan programs; (2) preparing responses to discovery requests, and especially providing responses to interrogatories and requests for production of documents; (3) providing information regarding repayment options available to the borrower; (4) providing testimony to the actual case either in person or by submission of a declaration/affidavit; and (5) facilitating settlement.

3. In order to fulfill my responsibilities, I have access to the National Student Loan Database System (NSLDS), a large computer database that includes information on all outstanding loans made pursuant to Title IV of the Higher Education Act of 1965, as amended (HEA), as well as a large body of loans made and paid off before inception of the NSLDS in 1994. The NSLDS includes a limited amount of information on loans not held by Education, including loans not in repayment status. This information is derived from regular reports to Education from the holders of the loans, including Education itself, based on the holder's regularly maintained records on these loans. The most accurate information regarding a loan, however, comes from the current holder of the loan.

4. I have access to electronic records maintained in the Common Origination and Disbursement (COD) system - a computer system for processing, storing, and reconciling Title IV financial aid data on a per-student basis. These records are created pursuant to Education's procedures by Education staff, by the staff of schools approved by Education to award these loans, as well as by applicants through the StudentLoans.gov Web site. The records contained in COD are made at or near the time of the transaction recorded, by or from information transmitted by a person with knowledge of the transaction, and are kept in the course of Education's regularly conducted business of administration of the several loan programs under which these loans are made, pursuant to Education's regular practice of making and keeping such records in the course of administration of the Direct Loan Program.

5. I am familiar with, and have access to, various other loan records maintained by Education and created by Education and prior holders regarding defaulted, federally financed student loans that Education holds. In addition to the electronic records already described, these loan records include documents such as the application and promissory notes, guaranty claims, correspondence, payment records, and other records that evidence transactions

2

between the borrower and the holders of his or her loan, including Education and the original lender, and, for guaranteed loans, the loan guarantor, servicer, and secondary market.

6. I am familiar with (a) the various types of loans authorized by Title IV of the HEA, (b) how information and records related to those loans are maintained, (c) the collection methods used by Education to collect on loans, including the Treasury Offset Program (TOP) and Administrative Wage Garnishment (AWG), (d) the various repayment plans and deferment/forbearance options available to Title IV borrowers, (e) the administrative discharge options offered pursuant to the HEA, and (f) Education's procedures for actions to be taken when a notice of bankruptcy is received on an account.

7. The information contained in this declaration is based upon my review of the computer records contained in the NSLDS and COD systems, and of imaged and hard copy records kept by Education and any prior holder of the loans taken out by Plaintiff Katherine Christine Loyle (Plaintiff or Katherine Loyle), and documents submitted by Plaintiff in this lawsuit, as well as on my knowledge of the student financial assistance programs authorized pursuant to Title IV of the HEA, and the laws and regulations governing those programs, including laws related to the collection of student loan debts. All amounts or events stated herein were derived from the records of the United States Department of Education.

**OVERVIEW OF WILLIAM D. FORD FEDERAL DIRECT LOAN PROGRAM**

8. The William D. Ford Federal Direct Loan Program (FDLP) is authorized under Title IV, Part D of the HEA. Loans under the FDLP first became available on July 1, 1994.

9. Four types of loans are offered under the FDLP: Direct Subsidized, Direct Unsubsidized, Direct PLUS (Parent Loan for Undergraduate Students and Graduate/Professional Students), and Direct Consolidation loans. Each type of loan has terms analogous to its counterpart under the Federal Family Education Loan Program (FFELP).

10. Under the FDLP, Education provides loans to qualified borrowers to facilitate their attendance at eligible postsecondary schools. Loan proceeds are provided to the school by electronic funds transfer (EFT) and are disbursed by credit to the student's account at

3

the school. Some funds may be disbursed by the school directly to the borrower.

11. In the event of a borrower's default in repaying his/her Direct Loan, the Department of Education transfers responsibility for servicing the Direct Loan from its federal loan servicer to the Department's Default Resolution Group, which pursues collection of the defaulted Direct Loan as it does other defaulted Title IV, HEA loans transferred from federal loan servicers or assigned from guaranty agencies and schools.

12. After default, Education engages in legally available collection efforts, including dunning letters, referral to private collection agencies, TOP, AWG, and, as a last resort, litigation.

13. Direct Loan Program loans may be administratively discharged, either partially or completely, on several grounds which mirror the relief available for FFELP loans: death, total and permanent disability, closed school, false certification, and unpaid refunds. To obtain an administrative discharge, borrowers submit a loan discharge application to Education.

## **LOAN HISTORY OF KATHERINE LOYLE**

14. On March 8, 2012 Katherine Loyle executed a Federal Direct Consolidation Loan Application and Promissory Note. See Trial Exhibit No. 38 (FFEL Promissory Note)

15. Katherine Loyle has taken out one (1) Direct Consolidation Loan (subsidized and unsubsidized portions), to consolidate a total of eight (8) loans pursuant to the Federal Family Education Loan Program (FFELP) and the William D. Ford Federal Direct Loan Program (FDLP). Four (4) FDLP loans and two (2) FFELP loans were for her attendance at the University of Houston, and two (2) were prior FFEL Consolidation Loans. See Trial Exhibit No. 39 (NSLDS Loan History) The subsidized and unsubsidized portions of the Direct Consolidation Loan are identified separately throughout the loan records, however, the Consolidation loan originates from a single promissory note and is a solitary loan. See Trial Exhibit No. 40 (NSLDS Loan Detail 1 & Loan Detail 2)

16. On or about May 17, 2012, June 1, 2012, and July 5, 2012, Katherine Loyle received disbursements for a Direct Consolidation Loan totaling $115,358.03, of which, $40,253.36 is the Direct Subsidized portion of the Consolidation Loan and $75,104.67 is the Direct

Unsubsidized portion of the Consolidation Loan. See Trial Exhibit No. 40 (NSLDS Loan Detail 1 & Loan Detail 2) & Trial Exhibit No. 42 (Consolidation Loan Origination History Record)

17. Mrs. Loyle's repayment period began in May 2012 and Mrs. Loyle applied for an Income Driven Repayment. Mrs. Loyle was accepted into an Income Driven Repayment Plan on May 20, 2012 for monthly payments of $0.00 for up to 12 months. See Trial Exhibit No. 41 (NSLDS Outstanding Amount Balance History Loan 1 & Loan 2) and Trial Exhibit No. 43 (ACS Servicing History).

18. On June 3, 2013, Mrs. Loyle recertified her income and elected to enroll into the Income Based Repayment Plan with an AGI of $83,493.00 and a family size of 6. Mrs. Loyle's Income Based Loan repayment amount was approved for a monthly payment of $451.35 for up to 12 months on June 06, 2013. Mrs. Loyle made payments of $451.35 under the recertified IBR plan, on July 18, 2013 and August 09, 2013. See Trial Exhibit No. 43 (ACS Servicing History)

19. In August of 2013, Mrs. Loyle's contracted servicer ACS, was changed to her current servicer, FedLoan Servicing. Mrs. Loyle continued her scheduled payment of $451.35 to FedLoan Servicing from September 26, 2013 through May 30, 2014. See Trial Exhibit No. 40 (NSLDS Loan Detail 1 & Loan Detail 2), Trial Exhibit No. 43 (ACS Servicing History) & Trial Exhibit No. 44 (FedLoan Servicing History).

20. On July 7, 2014, Mrs. Loyle verbally requested a short forbearance, which was approved from July 7, 2014 through September 30, 2014. On October 3, 2014, Mrs. Loyle verbally requested an additional short forbearance, which was approved October 01, 2014 through October 31, 2014. See Trial Exhibit No. 44 (FedLoan Servicing History).

21. On October 04, 2014, Mrs. Loyle recertified her income for her Income Based Repayment Plan with an AGI of $101,799.00 and a family size of 6. See Trial Exhibit No. 45 (COD IDR October 2014) Mrs. Loyle's Income Based Loan repayment amount was approved for a monthly payment of $267.65 for up to 12 months beginning January 07, 2015. Mrs. Loyle made her payments of $267.65 under the recertified IBR plan, beginning January 6, 2015 through December 28, 2015. See Trial Exhibit No. 44 (FedLoan Servicing History).

22. On January 4, 2016, Mrs. Loyle made a verbal request for a General Forbearance to postpone her monthly payments, the initial request was granted for January 7, 2016 through January 31, 2016. See Trial Exhibit No. 44 (FedLoan Servicing History). On January 6, 2016 Mrs. Loyle attempted to recertify her income with an AGI of $94,684.00 and a Family size of 7. See Trial Exhibit No. 46 (COD IDR January 2016) Mrs. Loyle's recertification was incomplete and not able to be processed. Mrs. Loyle was subsequently approved for a series of forbearances covering February 7, 2016 through March 31, 2016, April 07, 2016 through June 30, 2016, July 7, 2016 through September 30, 2016, October 7, 2016 through January 21, 2017, February 7, 2017 through February 28, 2017, and March 1, 2017 through March 10, 2017. See Trial Exhibit No. 44 (FedLoan Servicing History).

23. On January 20, 2017, Mrs. Loyle submitted a new IDR application, requesting to switch to a new plan with a lowest monthly payment. See Trial Exhibit No. 47 (IDR application January 2017) On January 27, 2017, Mrs. Loyle was approved for REPAYE, with a monthly payment of $290.06 beginning on March 7, 2017. Mrs. Loyle did not make her monthly payment of $290.06 and on April 18, 2017 Mrs. Loyle verbally requested a forbearance to postpone her monthly payments. The forbearance was approved through May 5, 2017. See Trial Exhibit No. 44 (FedLoan Servicing History).

24. On April 20, 2017, Mrs. Loyle submitted an IDR application to update her income and have her REPAYE plan recalculated. See Trial Exhibit No. 48 (IDR APP April 2017). Mrs. Loyle's REPAYE plan was recalculated on May 19, 2017, with a monthly payment of $0.00 for 8 months beginning on July 7, 2017. See Trial Exhibit No. 44 (FedLoan Servicing History).

25. On April 22, 2017, Mrs. Loyle submitted a Public Service Loan Forgiveness (PSLF) Employment Certification Form, in order to participate in the PSLF program. See Trial Exhibit No. 54 (PSLF Employment Certification Form). The Employment Certification Form was missing several necessary items and therefore was denied. Fedloan sent letter on April 24, 2017, notifying Mrs. Loyle of the denial and additional information needed. See Trial Exhibit No. No. 55 (ECF Denial Letter). As of April 28, 2021, Mrs. Loyle has not resubmitted an updated Employment Certification Form.

26. On April 3, 2018, Mrs. Loyle recertified her income for her REPAYE Plan with an AGI of $70,450.00 and a family size of 7. See Trial Exhibit No. 49 (COD IDR April 2018). Mrs. Loyle's REPAYE repayment amount was approved for a monthly payment of $51.12 for up to 12 months beginning May 7, 2018. Mrs. Loyle made her payments of $51.12 under the recertified REPAYE plan, beginning May 7, 2018 through March 7, 2019. See Trial Exhibit No. 44 (FedLoan Servicing History).

27. On January 24, 2019 Education received notice of D. Kan. Bankruptcy Case No. 19-10065. Bankruptcy holds were placed on Mrs. Loyle's account on January 24, 2019. On April 29, 2019 Education received notice of Notice of Discharge for Bankruptcy Case No. 19-10623. Mrs. Loyle's loans were not eligible for discharge, her bankruptcy holds were removed, and the account was returned to normal servicing. See Trial Exhibit No. 44 (FedLoan Servicing History).

28. On February 2, 2019, Mrs. Loyle recertified her income for her REPAYE Plan with an AGI of $70,450.00 and a family size of 7. See Trial Exhibit No. 50 (COD IDR February 2019) Mrs. Loyle's REPAYE repayment amount was approved for a monthly payment of $99.46 for up to 12 months beginning May 7, 2019. Mrs. Loyle made her payments of $99.46 under the recertified REPAYE plan, beginning May 4, 2019 through March 23, 2020. See Trial Exhibit No. 44 (FedLoan Servicing History).

29. Collectively Mrs. Loyle made 67 payments towards her loans, within her Income Based Repayment and REPAYE Plans, beginning May 20, 2012 through March 23, 2020 totaling $10,205.72. See Trial Exhibit No. 52 (Combined Payment History).

30. On March 25, 2020, Mrs. Loyle recertified her income for her REPAYE Plan with an AGI of $109,259.00 and a family size of 7. See Trial Exhibit No. 51 (COD IDR March 2020) Mrs. Loyle's REPAYE repayment amount was approved for a monthly payment of $165.79 for up to 12 months beginning June 7, 2020. See Trial Exhibit No. 44 (FedLoan Servicing History)

31. On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) became law, providing for the above relief measures on ED-owned federal student loans through Sept. 30, 2020. On April 4, 2020, FedLoan Servicing placed the necessary

holds to protect the account from March 13, 2020 through September 30, 2020, and subsequent extensions through at least September 30, 2021. See Trial Exhibit No. 44 (FedLoan Servicing History).

32. On May 12, 2020 Mrs. Loyle filed an Adversary proceeding, the bankruptcy holds were again placed on Mrs. Loyle's account, and no additional payments have been made. As of the April 28, 2021, Katherine Loyle was indebted to the United States in the amount of $152,913.34, for unpaid student loans. See Trial Exhibit No. 53 (Certificate of Indebtedness).

## LOAN REPAYMENT OPTIONS

33. The Direct Loan Program offers numerous loan repayment plans designed to meet the needs of almost every borrower. In repaying her Direct Consolidation Loans Katherine Loyle has the option to repay her debt to the Department under multiple repayment plans to include: Standard, Graduated, Income Based for all loans (34 C.F.R § 685.221), and Income Contingent and Revised Pay as You Earn (REPAYE) for Direct Loans. (34 C.F.R. § 685.208, 685.209).

34. Income-Driven Repayment (IDR) plans set the monthly student loan payment at an amount that is intended to be affordable based on the borrower's income and family size. IDR plans require the borrower's income to be recertified annually to determine continued eligibility or adjustment of monthly repayment amount, however if the borrower's income or family size changes significantly before the annual certification date (for example, due to loss of employment), the borrower can submit updated information and ask their servicer to recalculate the monthly payment amount at any time.

35. One of the repayment options currently available to Plaintiff is the Income Based Repayment Plan (IBR). Pursuant to the applicable Federal Regulations, monthly payments under the IBR Plan are limited to no more than 15 percent of the amount by which the borrower's [adjusted gross income] exceeds 150 percent of the poverty line income applicable to the borrower's family size, divided by 12." 34 C.F.R. § 685.221(b). Under the IBR, the repayment period for undergraduate loans is a maximum of 300 qualified monthly payments (twenty-five (25) years) at which point, any remaining

balance on the loan is eligible for student loan forgiveness by Education. See 34 CFR § 685.221(f). Based on Plaintiff's AGI of $119,604.00 from the 2020 Married Filing Joint federal tax return and a family size of 7, The estimated monthly student loan payment under IBR for the first 12 months would be $742.80, based on the following formula: (($119,604.00 - $60,180.00) *.15)/12. For borrowers who file a married filing joint tax return, the total payment would be prorated based on the percentage of loans for each borrower. Mrs. Loyle loans are 40.28% of total loan balance (between herself and Mr. Loyle), Mrs. Loyle's portion of the monthly payment would be $299.20.

36. One of the other repayment options to the Plaintiff under the Federal Direct Loan Program is the REPAYE option. See 34 C.F.R. §685.208. Pursuant to the applicable Federal Regulations, monthly payments under the REPAYE are equal to 10% of the difference between a borrower's AGI and 150% of the HHS Poverty Guidelines amount for the borrower's family size, divided by twelve (12). See 34 C.F.R. §685.208(k)(3) and §685.209(c)(1). The payments under the REPAYE are recalculated annually based upon a borrower's previous year's AGI. *Id*. Under the REPAYE, the repayment period for graduate loans is a maximum of 300 qualified monthly payments (twenty-five (25) years) at which point, any remaining balance on the loan eligible for student loan forgiveness by Education. See 34 C.F.R. §685.209(c)(5).

37. Based on AGI of $119,604.00 from the 2020 Married Filing Joint federal tax return and a family size of 7, the estimated monthly student loan payment under REPAYE for the first 12 months would be $495.20, based on the following formula: (($119,604.00 - $60,180.00) *.10)/ 12. For borrowers who file a married filing joint tax return, the total payment would be prorated based on the percentage of loans for each borrower. Mrs. Loyle's loans are 40.28% of total loan balance (between herself and Mr. Loyle), so Mrs. Loyle's portion of the monthly payment would be approximately $199.47.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on: May 14, 2021

_____
Cristin Bulman
Loan Analyst
Litigation Support Unit