IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE:<br><br>PARIS EDWARD THOMAS LOYLE,<br>AND KATHERINE CHRISTINE LOYLE,<br><br>    Debtors.<br><br>_____<br><br>PARIS EDWARD THOMAS LOYLE,<br>AND KATHERINE CHRISTINE LOYLE,<br><br>    Plaintiffs,<br>vs.<br><br>U.S. DEPARTMENT OF EDUCATION,<br>et al.,<br>    Defendants. | Case No. 19-10065<br>Chapter 7<br><br><br><br><br><br><br><br><br><br><br>Adversary No. 20-5073 |

## STIPULATION OF FACTS AS TO U.S. DEPARTMENT OF EDUCATION AND PARIS LOYLE

COME NOW the Plaintiff, United States Department of Education, through their respective counsel and submit the attached Declaration of Cristin Bulman Regarding Paris Loyle as stipulated facts as to the DOE Student Loans for Paris Loyle.

Respectfully submitted,

s/ Brian D. Sheern
BRIAN D. SHEERN
Assistant United States Attorney
301 N. Main, Suite 1200
Wichita, KS  67202
Tele:   316-269-6481
Fax:    316-269-6484
Brian.Sheern@usdoj.gov
Ks S.Ct.No. 21479
Attorney for DOE

In the United States Bankruptcy Court
In re: Paris and Katherine Loyle v. U.S. Department of Education, et al.
Adversary No. 20-5073
Stipulation of Facts As To U.S. Department of Education
Page 2


Approved by:
PRELLE ERON & BAILEY, P.A.

s/ January Bailey
January M. Bailey, #23926
Eron Law, P.A.
301 N. Main, Suite 2000
Wichita, KS 67202
T: (316) 262-5500
F: (316)262-5559
january@eronlaw.net
Attorney for Plaintiff

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| PARIS EDWARD THOMAS LOYLE, | ) | Case No. 19-10065 |
| AND KATHERINE CHRISTINE LOYLE, | ) | Chapter 7 |
| | ) | |
| Debtors. | ) | |
| | ) | |
| | ) | |
| PARIS EDWARD THOMAS LOYLE, | ) | |
| AND KATHERINE CHRISTINE LOYLE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| vs. | ) | Adversary No. 20-5073 |
| | ) | |
| U.S. DEPARTMENT OF EDUCATION, | ) | |
| et al., | ) | |
| Defendants. | ) | |
| | ) | |

DECLARATION OF CRISTIN BULMAN REGARDING PARIS LOYLE

I, Cristin Bulman, hereby declare as follows:

1. I am currently employed as a Loan Analyst, by the United States Department of Education [ED], Federal Student Aid, Student Experience and Aid Delivery Office, Delivery Systems and Extended Workforce Support, Borrower Processing Division, Discharge Branch, Litigation Support Team. I have been assigned the Paris Edward Thomas Loyle Adversary case and reviewed that file in preparation of this Declaration. All amounts or events stated herein were derived from the records of the United States Department of Education.

2. As a Loan Analyst, my responsibilities include assisting United States Attorney Offices with both Federal District and Bankruptcy Court litigation involving student loans. The litigation support provided includes, but is not limited to, the following: (1) providing background information on the individual's loan history (including repayment history and forbearance/deferment history) and loan programs; (2) preparing responses to

discovery requests, and especially providing responses to interrogatories and requests for production of documents; (3) providing information regarding repayment options available to the borrower; (4) providing testimony to the actual case either in person or by submission of a declaration/affidavit; and (5) facilitating settlement.

3. In order to fulfill my responsibilities, I have access to the National Student Loan Database System (NSLDS), a large computer database that includes information on all outstanding loans made pursuant to Title IV of the Higher Education Act of 1965, as amended (HEA), as well as a large body of loans made and paid off before inception of the NSLDS in 1994. The NSLDS includes a limited amount of information on loans not held by Education, including loans not in repayment status. This information is derived from regular reports to Education from the holders of the loans, including Education itself, based on the holder's regularly maintained records on these loans. The most accurate information regarding a loan, however, comes from the current holder of the loan.

4. I have access to electronic records maintained in the Common Origination and Disbursement (COD) system - a computer system for processing, storing, and reconciling Title IV financial aid data on a per-student basis. These records are created pursuant to Education's procedures by Education staff, by the staff of schools approved by Education to award these loans, as well as by applicants through the StudentLoans.gov Web site. The records contained in COD are made at or near the time of the transaction recorded, by or from information transmitted by a person with knowledge of the transaction, and are kept in the course of Education's regularly conducted business of administration of the several loan programs under which these loans are made, pursuant to Education's regular practice of making and keeping such records in the course of administration of the Direct Loan Program.

5. I am familiar with, and have access to, various other loan records maintained by Education and created by Education and prior holders regarding defaulted, federally financed student loans that Education holds. In addition to the electronic records already described, these loan records include documents such as the application and promissory notes, guaranty claims, correspondence, payment records, and other records that evidence transactions between the borrower and the holders of his or her loan, including Education and the original

lender, and, for guaranteed loans, the loan guarantor, servicer, and secondary market.

6. I am familiar with (a) the various types of loans authorized by Title IV of the HEA, (b) how information and records related to those loans are maintained, (c) the collection methods used by Education to collect on loans, including the Treasury Offset Program (TOP) and Administrative Wage Garnishment (AWG), (d) the various repayment plans and deferment/forbearance options available to Title IV borrowers, (e) the administrative discharge options offered pursuant to the HEA, and (f) Education's procedures for actions to be taken when a notice of bankruptcy is received on an account.

7. The information contained in this declaration is based upon my review of the computer records contained in the NSLDS and COD systems, and of imaged and hard copy records kept by Education and any prior holder of the loans taken out by Plaintiff Paris Edward Thomas Loyle (Plaintiff or Paris Loyle), and documents submitted by Plaintiff in this lawsuit, as well as on my knowledge of the student financial assistance programs authorized pursuant to Title IV of the HEA, and the laws and regulations governing those programs, including laws related to the collection of student loan debts. All amounts or events stated herein were derived from the records of the United States Department of Education.

## **OVERVIEW OF WILLIAM D. FORD FEDERAL DIRECT LOAN PROGRAM**

8. The William D. Ford Federal Direct Loan Program (FDLP) is authorized under Title IV, Part D of the HEA. Loans under the FDLP first became available on July 1, 1994.

9. Four types of loans are offered under the FDLP: Direct Subsidized, Direct Unsubsidized, Direct PLUS (Parent Loan for Undergraduate Students and Graduate/Professional Students), and Direct Consolidation loans. Each type of loan has terms analogous to its counterpart under the Federal Family Education Loan Program (FFELP).

10. Under the FDLP, Education provides loans to qualified borrowers to facilitate their attendance at eligible postsecondary schools. Loan proceeds are provided to the school by electronic funds transfer (EFT) and are disbursed by credit to the student's account at the school. Some funds may be disbursed by the school directly to the borrower.

11. In the event of a borrower's default in repaying his/her Direct Loan, the Department of Education transfers responsibility for servicing the Direct Loan from its federal loan servicer to the Department's Default Resolution Group, which pursues collection of the defaulted Direct Loan as it does other defaulted Title IV, HEA loans transferred from federal loan servicers or assigned from guaranty agencies and schools.

12. After default, Education engages in legally available collection efforts, including dunning letters, referral to private collection agencies, Treasury Offset Program, Administrative Wage Garnishment, and, as a last resort, litigation.

13. Direct Loan Program loans may be administratively discharged, either partially or completely, on several grounds which mirror the relief available for FFELP loans: death, total and permanent disability, closed school, false certification, and unpaid refunds. To obtain an administrative discharge, borrowers submit a loan discharge application to Education.

## LOAN HISTORY OF PARIS LOYLE

14. On March 30, 2012 Paris Loyle executed a Federal Direct Consolidation Loan Application and Promissory Note. See Trial Exhibit No. 17[1] (FFEL Promissory Note)

15. Paris Loyle has taken out one (1) Direct Consolidation Loan (subsidized and unsubsidized portions), to consolidate a total of three (3) loans pursuant to the Federal Family Education Loan Program (FFELP). Two (2) FFELP loans are for his attendance at Davenport University and a prior loan was a FFEL Consolidation Loan. See Trial Exhibit No. 18 (NSLDS Loan History) The subsidized and unsubsidized portions of the Direct Consolidation Loan are identified separately throughout the loan records, however, the Consolidation loan originates from a single promissory note and is a solitary loan. See Trial Exhibit No. 19 (NSLDS Loan Detail 1 & Loan Detail 2)

16. On or about May 11, 2012 and June 7, 2012 Paris Loyle received disbursements for the Direct Consolidation Loan totaling $173,508.41, of which $68,105.96 is the Direct Subsidized portion of the Consolidation Loan and $105,402.45 the Direct Unsubsidized

---

[1] This declaration references the exhibit numbers of the parties' joint exhibits offered at trial.

portion of the Consolidation Loan. See Trial Exhibit No. 19 (NSLDS Loan Detail 1 & Loan Detail 2) & Trial Exhibit No. 21 (Consolidation Loan Origination History Record)

17. Mr. Loyle's repayment period began in August 2012, after a short forbearance to allow for the Consolidation to be finalized. See Trial Exhibit No. 20 (NSLDS Outstanding Amount Balance History Loan 1 & Loan 2).[2] Mr. Loyle applied for Income Based Repayment (IBR) on October 15, 2012. See Trial Exhibit No. 22 (IBR Application October 15, 2012) Mr. Loyle was accepted into the IBR plan on October 24, 2012 for monthly payments of $67.62 for up to 12 months. Mr. Loyle made his first payment of $67.62 on December 7, 2012 and continued to make monthly payments of $67.62 through May of 2013. See Trial Exhibit No. 23 (ACS Servicing History)

18. In June of 2013, Mr. Loyle's contracted servicer ACS was changed to his current servicer, Navient. Mr. Loyle continued his scheduled payment of $67.62 to Navient from July 23, 2013 through October 28, 2013. See Trial Exhibit No. 19 (NSLDS Loan Detail 1 & Loan Detail 2) See Trial Exhibit No. 24 (Navient Servicing History)

19. On November 18, 2013, Mr. Loyle recertified his income for the Income Based Repayment plan with an AGI of $83,493.00 and a family size of 6. See Trial Exhibit No. 25 (IBR Request 10/2013) Mr. Loyle's Income Based Loan repayment amount was approved for a monthly payment of $276.37 for up to 12 months on December 02, 2013. See Trial Exhibit No. 24 (Navient Servicing History) On December 27, 2013, Mr. Loyle submitted request for a short forbearance, which was approved from 11/29/13 through 12/28/13. See Trial Exhibit No. 26 (Forbearance Request December 2013) and Trial Exhibit No. 24 (Navient Servicing History).

20. Mr. Loyle made his first payment under the recertified IBR plan on February 7, 2014 in the amount of $276.37. That same day, February 7, 2014, Mr. Loyle made an online request for a Hardship Deferment to postpone his monthly payments, on February 20, 2014 the request was granted for February 05, 2014, through August 4, 2014. See Trial Exhibit No. 24 (Navient Servicing History).

---

[2] Trial Exhibit No. 20 "RP" indicates a repayment period and "FB" indicates that the debtor is in forbearance.

21. On August 20, 2014, Mr. Loyle resumed his IBR payments, he made monthly payments of $276.37 from August 20, 2014 through October 27, 2014. See Trial Exhibit No. 24 (Navient Servicing History).

22. On November 25, 2014, Mr. Loyle made an online request for a Hardship Deferment to postpone his monthly payments. On December 1, 2014 the deferment was approved for November 25, 2014 through November 24, 2015. See Trial Exhibit No. 24 (Navient Servicing History).

23. On August 25, 2016, Mr. Loyle reapplied for an Income Driven Plan. Mr. Loyle recertified his income and was reenrolled for the Income Based Repayment plan with an AGI of $94,179.00 and a family size of 7. See Trial Exhibit No. 27 (COD IDR August 2016). Mr. Loyle was sent an approval letter on November 30, 2016 for a monthly payment of $73.38 for up to 12 months, beginning December 27, 2016 through November 27, 2017. See Trial Exhibit No. 28 (IBR Approval Letter 11/30/2016). Mr. Loyle resumed making payments on April 10, 2017. He made monthly payments of $73.38 from April 10, 2017 through September 25, 2017, on November 8, 2017, and on December 17, 2017. See Trial Exhibit No. 24 (Navient Servicing History)

24. On October 24, 2017, Mr. Loyle submitted his recertification for his Income Driven Repayment plan, with an AGI of $53,490.00 and a family size of 7. See Trial Exhibit No. 29 (IDR Recertification 10/24/2017) On November 6, 2017 Mr. Loyle's IDR recertification was processed and on November 27, 2017 Navient sent Mr. Loyle an IBR approval letter for a monthly payment of $0.00 beginning on December 27, 2017 through November 27, 2018. See Trial Exhibit No. 30 (IBR Approval Letter 11/27/2017)

25. On September 24, 2018, Mr. Loyle submitted his recertification for his Income Driven Repayment plan, without the necessary the income information and it could not be processed. See Trial Exhibit No. 31 (IDR Recertification 09/24/2018) On December 6, 2018 Mr. Loyle resubmitted his completed certification of income. See Trial Exhibit No. 32 (IDR Recertification 12/06/2018) On December 14, 2018 Navient sent Mr. Loyle an IBR approval letter for a monthly payment of $100.27 beginning on December 27, 2018 through November 27, 2019. Mr. Loyle did not make any payments during this timeframe.

See Trial Exhibit No. 33 (IBR Approval Letter 12/14/2018) and Trial Exhibit No. 24 (Navient Servicing History)

26. Collectively, Mr. Loyle made 35 payments towards his loans, within his Income based repayment plan, beginning December 7, 2012 through November 27, 2018 totaling $2,909.68. See Trial Exhibit No. 36 (Combined Payment History)

27. On January 22, 2019 Education received notice of D. Kan. Bankruptcy Case No. 19-10065 and bankruptcy holds were placed on Mr. Loyle's account on January 22, 2019. On April 24, 2019 Education received notice of Notice of Discharge for Bankruptcy Case No. 19-10623. Loyle's loans were not eligible for discharge, his bankruptcy holds were removed, and the account was returned to normal servicing. See Trial Exhibit No. 24 (Navient Servicing History).

28. Mr. Loyle requested a forbearance on August 23, 2019 to postpone his monthly payments, the request was approved, and a forbearance was placed on the account from April 24, 2019 through October 9, 2019. Mr. Loyle's payments were to resume on November 9, 2019. See Trial Exhibit No. 34 (Forbearance Request 08/23/2019) On December 19, 2019 Mr. Loyle requested an additional forbearance to postpone his monthly payments, the request was approved, and a forbearance was placed on his account through March 28, 2020. See Trial Exhibit No. 35 (Forbearance Request 12/19/2019)

29. On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) became law, providing for the above relief measures on ED-owned federal student loans through Sept. 30, 2020. On April 4, 2020, Navient placed the necessary holds to protect the account from March 13, 2020 through September 30, 2020, and subsequent extensions through at least September 30, 2021. See Trial Exhibit No. 24 (Navient Servicing History).

30. On May 12, 2020 Mr. Loyle filed an Adversary proceeding and the bankruptcy protections were placed on Mr. Loyle's account. As of the April 28, 2021, Paris Loyle was indebted to the United States in the amount of $226,699.47 for unpaid student loans and no additional payment have been received. See Trial Exhibit No. 37 (Certificate of Indebtedness)

## LOAN REPAYMENT OPTIONS

31. The Direct Loan Program offers numerous loan repayment plans designed to meet the needs of almost every borrower. In repaying his Direct Consolidation Loan Paris Loyle has the option to repay his debt to the Department under multiple repayment plans to include: Standard, Graduated, Income Based for all loans (34 C.F.R § 685.221), and Income Contingent and Revised Pay as You Earn (REPAYE) for Direct Loans. (34 C.F.R. § 685.208, 685.209).

32. Standard Repayment is the basic repayment plan for loans from the William D. Ford Federal Direct Loan (Direct Loan) Program and Federal Family Education Loan (FFEL) Program. Payments are fixed and made between 10 and 30 years for consolidation loans. The length of the borrower's repayment period will depend on the amount of their total education loan indebtedness. The maximum repayment period for a Direct Consolidation Loan of $60,000 or more is 30 years.

33. On May 15, 2012, Mr. Loyle's Standard repayment was calculated and documented based on his total balance, at the time, of $173,663.66. Mr. Loyle's monthly payment was $878.24 for a total of 359 payments, beginning August 28, 2012 with a final payment on July 28, 2042. See Trial Exhibit No. 23 (ACS Servicing History).

34. Income-Driven Repayment (IDR) plans set the monthly student loan payment at an amount that is intended to be affordable based on the borrower's income and family size. IDR plans require the borrower's income to be recertified annually to determine continued eligibility or adjustment of monthly repayment amount, however if the borrower's income or family size changes significantly before the annual certification date (for example, due to loss of employment), the borrower can submit updated information and ask their servicer to recalculate the monthly payment amount at any time.

35. One of the repayment options currently available to Plaintiff is the Income Based Repayment Plan (IBR). Pursuant to the applicable Federal Regulations, monthly payments under the IBR Plan are "limited to no more than 15 percent of the amount by which the borrower's [adjusted gross income] exceeds 150 percent of the poverty line

income applicable to the borrower's family size, divided by 12." 34 C.F.R. § 685.221(b). Under the IBR, the repayment period for undergraduate loans is a maximum of 300 qualified monthly payments (twenty-five (25) years) at which point, any remaining balance on the loan is eligible for student loan forgiveness by Education. See 34 CFR § 685.221(f). Based on Plaintiff's AGI of $119,604.00 from the 2020 Married Filing Joint federal tax return and a family size of 7, The estimated monthly student loan payment under IBR for the first 12 months would be $742.80, based on the following formula: (($119,604.00 - $60,180.00) *.15)/ 12. For borrowers who file a married filing joint tax return, the total payment would be prorated based on the percentage of loans for each borrower. Mr. Loyle's loans are 59.72% of total loan balance (between himself and Mrs. Loyle), Mr. Loyle's portion of the monthly payment would be approximately $443.60.

36. One of the other repayment options to the Plaintiff under the Federal Direct Loan Program is the REPAYE option. See 34 C.F.R. §685.208. Pursuant to the applicable Federal Regulations, monthly payments under the REPAYE are equal to 10% of the difference between a borrower's AGI and 150% of the HHS Poverty Guidelines amount for the borrower's family size, divided by twelve (12). See 34 C.F.R. §685.208(k)(3) and §685.209(c)(1). The payments under the REPAYE are recalculated annually based upon a borrower's previous year's AGI. *Id*. Under the REPAYE, the repayment period for graduate loans is a maximum of 300 qualified monthly payments (twenty-five (25) years) at which point, any remaining balance on the loan eligible for student loan forgiveness by Education. See 34 C.F.R. §685.209(c)(5).

37. Based on AGI of $119,604.00 from the 2020 Married Filing Joint federal tax return and a family size of 7, the estimated monthly student loan payment under REPAYE for the first 12 months would be $495.20, based on the following formula: (($119,604.00 - $60,180.00) *.10)/ 12. For borrowers who file a married filing joint tax return, the total payment would be prorated based on the percentage of loans for each borrower. Mr. Loyle's loans are 59.72% of total loan balance (between himself and Mrs. Loyle), Mr. Loyle's portion of the monthly payment would be approximately $295.73

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on: May 17, 2021

Cristin Bulman
Loan Analyst
Litigation Support Unit